UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 15-50-DLB**

**SHERRY ROWLAND**                                                                                          **PLAINTIFF**


vs.                          **MEMORANDUM OPINION AND ORDER**


**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                                      **DEFENDANT**

*********************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 16, 2012, Plaintiff Sherry Rowland filed her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability as of November 27, 2008.[1] (Tr. 229-38). Plaintiff's claim was denied initially and on reconsideration. (Tr. 138-39 and 166-67). On October 1, 2013, Administrative Law Judge Peter J. Boylan conducted an administrative hearing at Plaintiff's request. (Tr. 59-96). ALJ Boylan ruled that Plaintiff was not entitled to benefits on January 8, 2014. (Tr. 40-

---

1) Plaintiff filed a prior disability application, which culminated in a finding of "not disabled." (Tr. 40). As ALJ Boylan noted, "[a]ny discussion of evidence from before the prior decision date is for historical purposes only and not meant to re-adjudicate the prior period." (*Id.*).

53). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 25, 2015. (Tr. 1-6).

On April 13, 2015, Plaintiff filed the instant action. (Docs. # 1 and 2). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 12 and 13).

## II. DISCUSSION

### A.   *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from

the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *The ALJ's Determination*

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 2, 2008, the amended alleged onset date.[2] (Tr. 42). At Step 2, the ALJ determined that Plaintiff has the following severe impairments: (1) degenerative joint disease; (2) affective disorder; (3) anxiety; (4) post-traumatic stress disorder; (5) personality disorder; (6) attention deficit with hyperactivity disorder; and (6) obesity. (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 44-45). Specifically, the ALJ concluded that Plaintiff's knee pain does not meet the requirements of Listing 1.02A (major dysfunction of a joint due to any cause) because "there is no evidence of anatomical deformity with chronic joint pain and joint space narrowing resulting in the inability to ambulate effectively as defined in 1.00B2b(2)." (*Id.*). The ALJ also noted that Plaintiff is able to walk without assistive devices. (*Id.*).

The ALJ also found that Plaintiff's mental health problems do not meet the requirements of Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders) or Listing 12.08 (personality disorders). (*Id.*). Although the ALJ acknowledged that Plaintiff

---

2) According to the hearing decision, Plaintiff amended her alleged onset date to December 2, 2008, the day after ALJ Timothy G. Keller issued his decision on Plaintiff's prior application. (Tr. 40 and 109). The record also reflects that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2009. (Tr. 42).

has difficulty interacting with strangers and does not handle stress well, she is able to interact effectively with some individuals and "is able to sustain focus and concentration long enough to permit the timely and appropriate completion of tasks that require her attention." (*Id.*). Moreover, Plaintiff has not experienced any episodes of decompensation of extended duration. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(b). (Tr. 46). Specifically, the ALJ observed that:

> [the claimant] can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes or scaffolds. She can occasionally kneel, crouch, and crawl. The claimant must avoid all exposure to workplace hazards. She can perform simple, routine, repetitive tasks. The claimant cannot perform production rate paced work (i.e. assembly line type work). She can perform goal-oriented tasks (i.e. office cleaning work). The claimant requires a task oriented work setting. She can make simple work-related decisions. The claimant can occasionally interact superficially with the public, coworkers, and supervisors. She can tolerate occasional changes in her routine work setting.

(Tr. 46). The ALJ further found that Plaintiff is capable of performing past relevant work as a janitor or cleaner because it "does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" (Tr. 51).

Despite this finding, the ALJ proceeded to the final step of the sequential evaluation and found that there are other jobs existing in the national economy that Plaintiff is also able to perform. (Tr. 51). The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find light work as a hand

4

packager (160,000 nationally/1,500 regionally), an inspector (75,000 nationally/500 regionally) or a routing clerk (15,300 nationally/400 regionally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she is not under a "disability," as defined by the Social Security Act. (*Id.*).

## C. *Plaintiff's Arguments*

Plaintiff advances two arguments on appeal. (Doc. # 14-1). First, Plaintiff argues that the ALJ erred in giving more weight to the opinions of non-examining sources than treating and non-treating sources. Second, Plaintiff complains that the ALJ relied on the VE's answer to an inaccurate hypothetical at Step 5. Each of these arguments will be addressed in turn.

### 1. The ALJ did not err in giving more weight to the opinions of non-examining sources than treating and non-treating sources.

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of [claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2). Such opinion evidence may come from treating sources, non-treating sources and/or non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source is an acceptable medical source who has not examined the claimant but provided medical

or other opinion evidence in the case. *Id.*

In this case, the ALJ considered all three types of opinion evidence. After reviewing the record before him, the ALJ gave "some weight" to the opinion of Dr. Richard Meyer, a treating source, and Dr. Jason Lee, a non-treating source who examined Plaintiff on one occasion. He afforded "little weight" to the opinion of Dr. Ellen Yass-Reed, another non-treating source who examined Plaintiff on one occasion. The ALJ gave "significant weight" to the opinions of Drs. Dan VanDivier, Laura Cutler and Jack Reed, all non-examining sources who reviewed Plaintiff's medical records. Plaintiff argues that the ALJ erred in weighing each of these opinions. The Court will review the ALJ's treatment of each opinion in turn.

### a. Dr. Richard Meyer

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* The ALJ must provide "good reasons" for giving less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Specifically, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion,

supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

The "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 CFR § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010).

Treatment notes indicate that Dr. Richard Meyer, a psychologist with the Good Shepherd Institute, treated Plaintiff on three occasions in 2013. (Tr. 492-96). He later completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) for Plaintiff. (Tr. 487-489). In this assessment, Dr. Meyer "indicated that the claimant had no useful mental ability and/or was seriously limited in a number of mental health categories." (Tr. 49). Although the ALJ recognized that Dr. Meyer was a treating source,[3] he "gave this

---

3) Although the ALJ suggests that Dr. Meyer's entire opinion is subject to the "treating physician" rule, only part of it actually reads as a medical opinion. The remainder reads as an opinion on Plaintiff's functional limitations, which is an issue reserved for the Commissioner. For reasons explained in the body of this opinion, the Court finds that the ALJ gave "good reasons" for affording less than controlling weight to Dr. Meyer's medical opinion. Because the ALJ satisfied this more stringent standard, and because he is only required to briefly explain the weight given to non-

opinion some (i.e., but less than great or controlling) weight." (*Id.*). He explained that Dr. Meyer's opinion was not entitled to controlling weight because it was internally inconsistent. (*Id.*). For example, Dr. Meyer suggested that Plaintiff was seriously limited in several mental health categories, but then opined that she could be trained to do simple jobs and was capable of getting along with others at times. (*Id.*). The ALJ also observed that Dr. Meyer's opinion was inconsistent with Plaintiff's activities, which include taking care of herself and others. (*Id.*).

Having determined that Dr. Meyer's opinion was not entitled to controlling weight, the ALJ then proceeded to explain how much weight he would give the opinion, based on the 20 C.F.R. § 404.1527(d)(2) factors. (*Id.*). He noted that Dr. Meyer's treating relationship with Plaintiff was brief in duration, as he only examined her on three occasions. (*Id.*). And again, he noted that parts of Dr. Meyer's opinion were inconsistent with Plaintiff's activities. (*Id.*). However, he ultimately concluded that Dr. Meyer's opinion was entitled to some weight "where it was consistent with the claimant's ability to perform simple, routine, repetitive tasks[.]" (*Id.*).

In short, the ALJ specifically stated that Dr. Meyer's opinion was not entitled to controlling weight. (*Id.*). He then explained *how* he arrived at that determination, citing to several inconsistencies in Dr. Meyer's opinion, as well as inconsistencies between his opinion and other aspects of the record. (*Id.*). Finally, the ALJ identified which portions of Dr. Meyer's opinion he would still consider. (*Id.*). This is sufficient to satisfy the "treating physician" rule and its "good reasons" requirement. Because the ALJ engaged in the

---

medical opinions from treating sources, the Court finds that the ALJ also complied with the regulations in discussing Dr. Meyer's vocational opinion.

proper analysis and reached a conclusion that is supported by substantial evidence, the Court finds no error in his treatment of Dr. Meyer's opinion.

### b. Drs. Ellen Yass-Reed and Jason Lee

The 20 C.F.R. § 404.1527(d)(2) factors discussed above also guide the ALJ in determining how much weight to accord a non-treating physician's opinion. *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D. Ohio March 4, 2008). Accordingly, the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*; 20 C.F.R. § 404.1527(d)(2).

Dr. Ellen Yass-Reed, a psychologist, examined Plaintiff on one occasion in June of 2012. (Tr. 446-59). She opined that Plaintiff's "ability to persist for an 8-hour workday appeared to be moderately to severely impaired by [her] mental health conditions." (Tr. 48 and 453). She stated that Plaintiff was mildly impaired in her ability to negotiate relationships with a supervisor and moderately to severely impaired in her ability to deal with coworkers and respond to pressures in a work setting. (*Id.*). The ALJ found that Dr. Yass-Reed's opinion was entitled to little weight because the limitations prescribed were "somewhat vague." (Tr. 48). He also explained that "the opinion was inconsistent with [Plaintiff's] conservative treatment history," as well as Plaintiff's daily activities. (*Id.*).

Dr. Jason Lee, a physical consultative examiner, also met with Plaintiff in June of 2012. (Tr. 456-60). He indicated that Plaintiff would find it difficult to sit, stand and walk for a full work day and would require frequent breaks. (*Id.*). He further suggested that Plaintiff's conditions would improve with treatment. (*Id.*). The ALJ found that Dr. Lee's

opinion was entitled to "some weight;" however, he found that "the evidence demonstrated that any limitations that would preclude sustaining a full work day were not supported by [Plaintiff's] conservative treatment history or her benign clinical findings." (Tr. 49). After all, Plaintiff stopped working because her pay was lowered, not because physical or mental problems precluded her from doing so. (*Id.*).

In both instances, the ALJ weighed the opinions using the 20 C.F.R. § 404.1527(c) factors. (Tr. 48-49). His decision references the length of the treatment relationship (one visit), the context of the visit (a consultative examination) and the conclusions of each (precluded from work). (*Id.*). He then identified what aspects of each opinion were consistent with other evidence in the record and what aspects were inconsistent. (*Id.*). He also explained how much weight he assigned to each opinion and why he did so. (*Id.*). Because the ALJ engaged in the proper analysis and reached a conclusion that is supported by substantial evidence, the Court finds no error in his treatment of Dr. Yass-Reed's and Dr. Lee's opinions.

### c.   *Drs. Dan VanDivier, Laura Cutler and Jack Reed*

The ALJ also uses the 20 C.F.R. § 404.1527(d)(2) factors in weighing a non-examining physician's opinion. *Davenport*, 2008 WL 641131, at *6. While opinions from non-treating sources typically receive more weight than opinions from non-examining sources, deviation from this general approach is not a *per se* error of law. *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 433 (6th Cir. 2012). For example, an opinion from a state agency medical consultant may be entitled to greater weight than examining or treating source opinions. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (July 2, 1996)). This is particularly

so when the consultant's opinion is based on a review of the complete case record that "provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

Drs. Dan Vandivier and Laura Cutler, both state agency psychological consultants, reviewed Plaintiff's medical records and ultimately adopted the findings of the prior administrative decision. (Tr. 49). Specifically, they opined that Plaintiff could maintain concentration for two-hour segments over an eight-hour workday, adapt to simple changes and interact appropriately with coworkers and supervisors "in a task-oriented setting where contact with others was casual and infrequent." (*Id.*). The ALJ gave these opinions "great weight" because "[t]hey were consistent with [Plaintiff's] history of mental health conditions that limited, but did not preclude, her ability to interact with others and concentrate." (*Id.*). The ALJ also noted that these opinions were consistent with Plaintiff's daily activities, as well as the results of her consultative examination. (*Id.*).

Dr. Jack Reed also reviewed Plaintiff's medical records and concluded that she could perform "light work" despite her knee problems. (*Id.*). The ALJ afforded "significant weight" to this opinion because it was consistent with Plaintiff's history of knee problems, daily activities, diagnostic results and other clinical findings. (*Id.*).

Again, the ALJ identified what aspects of each opinion were consistent with other evidence in the record and what aspects were inconsistent. (*Id.*). He then specified the amount of weight given to each opinion and why. (*Id.*). Because the ALJ engaged in the proper analysis and reached a conclusion that is supported by substantial evidence, the Court finds no error in his weighing of Dr. Vandivier's, Dr. Cutler's and Dr. Reed's opinions.

## 2. The ALJ did not err in rendering his RFC assessment.

A residual functional capacity ("RFC") is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff does not specifically attack the ALJ's RFC assessment. However, because the RFC is derived, in part, from medical opinion evidence, the Court will briefly address it. The record reflects that the ALJ reviewed all of the evidence in the record. (Tr. 46-51). He identified the available sources of evidence, explained how he weighed those sources and factored the limitations that he found to be credible into the RFC assessment. (*Id.*). For these reasons, the Court finds that the RFC assessment is supported by substantial evidence.

## 3. The ALJ relied on the VE's answer to an appropriate hypothetical.

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations

he finds to be credible. *Casey*, 987 F.2d at 1235.

Plaintiff briefly suggests that the ALJ should have incorporated more of the limitations proposed by Drs. Meyer and Yass-Reed into his hypothetical question. (Doc. # 12-1 at 13). However, for reasons explained above, the ALJ found only some of the proposed limitations to be credible. Because the ALJ incorporated those limitations into his hypothetical question, the Court finds no error in the ALJ's Step 5 analysis.[4]

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 1st day of April, 2016.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\Covington\15-50 Rowland MOO.wpd

---

4) Because the ALJ found that Plaintiff is capable of performing past relevant work, he was not obligated to proceed to Step 5 at all. *See Neihoff v. Chater*, 74 F.3d 1240 (6th Cir. 1996) (Table) ("If a claimant can still perform such past relevant work, a finding of disability is precluded."). It seems that he proceeded to Step 5 out of an abundance of caution.